UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NANCY A. BURT,

                             Plaintiff,

v.                                                                CASE # 18-cv-01252

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | BRANDI CHRISTINE<br>SMITH, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | CATHARINE LOUISE<br>ZURBRUGG, ESQ.<br>JOHN C. FISCHER, ESQ.<br>DENNIS J. CANNING, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is **DENIED**, the Defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on October 27, 1964 and has a high school education. (Tr. 24, 206). Generally, plaintiff's alleged disability consists of multiple sclerosis, depression, anxiety, memory loss and herniated discs. (Tr. 173). Her alleged onset date of disability is July 8, 2014. Her date last insured is December 31, 2019. (Tr. 155).

   B.   **Procedural History**

On July 10, 2014, plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 79). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 11, 2017, plaintiff appeared before the ALJ, Sharon Seeley. (Tr. 32-79). On January 2, 2018, ALJ Seeley issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 11-31). On September 24, 2018, the Appeals Council ("AC") denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since July 8, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: multiple sclerosis, an unspecified anxiety disorder, and an unspecified depressive disorder. (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations. The claimant must alternate after one hour of standing or walking to sitting five minutes and after one hour of sitting to standing for five minutes. She can work in an environment with no exposure to hazards such as unprotected heights or moving machinery and no exposure to weather or to extreme heat or cold. Further, the claimant can understand, remember and carry out simple routine instructions and tasks, and can maintain attention and concentration sufficient for such tasks with customary work breaks. She can occasionally interact with supervisors, coworkers, and the general public, but not work in teams or tandem with others. She can work in a low-stress environment, meaning one with no supervisory responsibilities, no independent decision-making required except with respect to simple, routine work-related decisions, no work at production rate pace, and minimal changes in work routines, processes or setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 27, 1964, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged onset date. The claimant subsequently changed age category to closely approaching advance age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1534 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 8, 2014, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-25).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially two broad arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the ALJ's physical RFC determination was not supported by substantial evidence. Second, the ALJ's mental RFC determination was based on improper evaluation of opinion evidence. (Dkt. No. 10 at 1 [Plantiff's Mem. Of Law]).

### B. Defendant's Arguments

In response, defendant makes four arguments. First, defendant argues the ALJ determined plaintiff's RFC based on the record as a whole and included credible limitations that plaintiff alleged. (Dkt. No. 13 at 14 [Def.'s Mem. of Law]). Second, the ALJ properly evaluated plaintiff's shoulder impairments. (Dkt. No. 13 at 23). Third, the ALJ properly relied on opinion evidence and the physical RFC finding was supported by substantial evidence. (Dkt. No. 13 at 24). Lastly, the ALJ properly relied on opinions of the consultative mental examiners instead of unsupported opinions of plaintiff's treating psychiatrist. (Dkt. No. 13 at 25).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant

will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.**     **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme

Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Physical RFC

Plaintiff broadly asserts the ALJ's physical RFC finding is not supported by substantial evidence. (Dkt. No. 10 at 15). The RFC is an assessment of "the most [plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). The ALJ limited plaintiff to a reduced range of light work.[1] The ALJ gave Plaintiff the option of alternating from one hour of standing or walking to sitting five minutes and after one hour of sitting to standing for five minutes and could not be exposed to hazards, weather, or extreme heat or cold. (Tr. 19).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff first argues the RFC is not based on substantial evidence because the ALJ erroneously relied on the opinion of consultative examiner Dr. Balderman. As stated in her brief, this opinion was the only functional assessment in the administrative record. (Dkt. No. 10 at 16). Dr. Balderman examined plaintiff in November 2014. Plaintiff was in no acute distress with normal gait and stance. (Tr. 655). She squatted 90 percent full and rose from a chair without difficulty (Tr. 655). She walked on her heels and toes and got on and off the examination table without difficulty (Tr. 655). She had full lumbar range of motion, except it was somewhat reduced to 90 percent on flexion. (Tr. 656). Straight leg raise testing was negative. (Tr. 656). She had full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles. (Tr. 656). She had full strength in her extremities, and her reflexes were normal. (Tr. 656). Dr. Balderman opined plaintiff could not work from unprotected heights and had moderate limitations in carrying and climbing due to poor balance. (Tr. 657). He did not offer any opinion as to her ability to sit, stand, walking, push, pull, handle, finger, reach, lift, stoop, bend, crawl, or crouch. (Tr. 657). The ALJ accorded significant weight to Dr. Balderman's opinion because it was consistent with the record as a whole, including plaintiff's self-report that she could lift 20 pounds and independently perform her daily activities. (Tr. 23, 42-43, 189, 648, 651, 816).

Plaintiff's argument that the ALJ's reliance on the opinion is improper because her multiple sclerosis (MS) deteriorated and she developed more physical impairments after the examination is unavailing. (Dkt. No. 10 at 17). In deciding a disability claim, the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 R. App'x 53, 56 (2d Cir. 2013).

Plaintiff is correct that there was no treatment with immunosuppressant drugs at the time of the consultative examination, however, the claimant was not receiving any treatment for her

7

MS. When she established care with neurologist Dr. Kinkel, in May 2015, she reported it had been "some time" since she had treatment for her MS. (Tr. 741). As discussed by the ALJ, plaintiff was diagnosed with MS in 2000, about 14 years prior to her alleged onset date. (Tr. 20, 654). Treatment notes however have indicated that her MS was stable without involvement of the spine. (Tr. 20, 864). *See Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6-7 (W.D.N.Y. May 12, 2017)(holding that a medical opinion issued two years prior to the ALJ's decision was not stale because there was no evidence that the claimant's condition had significantly deteriorated after the opinion was issued and it was consistent with the consultant's clinical examination and with the record as a whole). Plaintiff testified she performed her resource assistant job with MS for about 14 years and quit for reasons unrelated to her physical health. (Tr. 44-45). In January 2016, treating neurologist Dr. Kinkel said that her MS "appears to be relatively quiescent," and plaintiff had "no clear symptoms to suggest an MS exacerbation." (Tr. 811). Plaintiff also reported she could not work due to cognition and memory, not physical limitations. (Tr. 809).

On several occasions, plaintiff complained of various symptoms that she seemed to believe were caused by her MS, but her providers told her that was not case. (Tr. 637, 766). Her subsequent visit with Dr. Kinkel in April 2016 showed no deterioration in her condition. (Tr. 828-29). Coordination and strength testing were normal, and plaintiff's reflexes, tone, sensation, and gait were normal too (Tr. 829). Dr. Balderman's findings were consistent with many of the examination results in the treatment notes indicating unremarkable except for some impaired balance. (Tr. 623-24, 635, 713, 742, 766, 829). *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

The additional impairments argued by plaintiff were shoulder injuries which were properly described by the ALJ in the Step Two finding as not severe impairments. (Tr. 17). The ALJ noted plaintiff injured her right shoulder after stumbling while at a concert and a subsequent cortisone injection. (Tr. 17, 793, 797). Later that month, she had near normal range of motion and no pain with range of motion in the right shoulder. (Tr. 803-04). Plaintiff said her shoulder "felt considerably better" after taking the steroids for her MS and additional invasive treatment was recommended to be delayed. (Tr. 804). The ALJ noted the record shows no subsequent treatment for plaintiff's right shoulder and properly concluded that plaintiff did not establish more than a minimal limitation due to her right shoulder injury. *See* 20 C.F.R. § 404.1521(a); SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996).

As for the additional impairment of the left shoulder, the ALJ again satisfied her duty noting pain and weakness in the left shoulder starting in January 2017. (Tr. 17, 959). Treatment included an injection and physical therapy. (Tr. 17, 935-947). An MRI was ordered in March 2017 but there are no records of subsequent treatment. (Tr. 17, 963). Plaintiff did not establish that her left shoulder impairment lasted for 12 consecutive months and the ALJ properly found it was not a severe impairment. See 20 C.F.R. § 404.1509 (stating that an impairment cannot be considered disabling unless it lasted or is expected to last for a continuous period of twelve months).

The ALJ was performing her duty by using Dr. Balderman's assessment and observations when formulating the RFC despite Dr. Balderman's opinion lacking explicit limitations on some exertional abilities. *See Tepanier v. Comm'r of Soc. Sec. Admin.*, No. 17-3684-CV, 2018 WL 5919906, at *4 (2d Cir. Nov. 13, 2018) ("Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, however, the ALJ was entitled to weigh all of the evidence available to make an [RFC] finding that was consistent

9

with the record as a whole."). Although Dr. Balderman was silent on limitations related to sitting, standing, walking, lifting, pushing, pulling, handling, fingering, reaching, stooping, bending, crawling, or crouching the ALJ still incorporated limitations that were indicated by the record as a whole. The ALJ found greater limitations than Dr. Balderman opined which is permitted. *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'").

Although the ALJ's discussion of the medical evidence was brief, an ALJ's decision is sufficient so long as the ALJ's reasoning is clear and a reviewing court can conduct "meaningful judicial review." *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed."). The medical record in this case is very lengthy and the ALJ highlighted the minimal objective findings and stable MS. "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)).

In addition to the medical records, the ALJ also relied on plaintiff's reports and some of the physical RFC limitations that the ALJ assessed were consistent with those reports. Plaintiff said that after sitting or standing for a "long period of time," she had tingling in her toes and legs

and back pain. (Tr. 189-90). Thus, the ALJ included the option to alternate between sitting and standing every hour. (Tr. 19). Plaintiff also said that she could not lift more than 20 pounds (Tr. 189), which is consistent with the lifting required by light work. *See* 20 C.F.R. § 404.1567(b). The ALJ correctly noted that plaintiff performed household chores like cooking, cleaning, dishes, and laundry. (Tr. 18, 651, 816). Plaintiff lived alone, did her grocery shopping, cared for pets, managed her money, paid bills, and read regularly. (Tr. 18, 42, 57, 651, 816). *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009).

### B. Mental RFC

To account for plaintiff's mental impairments, the ALJ limited her to simple, routine tasks in a low-stress environment that did not require fast-paced production requirements. (Tr. 19). The ALJ further limited plaintiff to minimal changes in work routines, processes, and setting. (Tr. 19). To account for any social limitations, the ALJ limited her to occasional interaction with supervisors, co-workers, and the public, and found that Plaintiff could not work tasks in tandem with others. (Tr. 19). Plaintiff argues the mental RFC is not supported by substantial evidence because the ALJ did not properly evaluate the medical opinions regarding her mental functioning. (Dkt. No. 10 at 20). Specifically, plaintiff argues the ALJ should have given more weight to the treating psychiatrist instead of the consultative examiners.

In November 2015, treating psychiatrist Dr. Kim completed a Mental RFC Questionnaire (Tr. 769-73). Dr. Kim checked boxes indicating that plaintiff had no useful functioning or was unable to meet competitive standards in 7 of 16 abilities necessary to perform unskilled work and 3 of 4 abilities necessary to perform skilled and semi-skilled work. (Tr. 771-72). In addition, Dr. Kim checked boxes indicating that plaintiff had no limitations interacting with the public and maintaining socially appropriate behavior. (Tr. 772). Plaintiff's treatment by Dr. Kim was

11

medication management every few months and then regular counseling with her therapist. (Tr. 22).

A treating physician's opinion is given controlling weight only if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not give controlling weight to the treating physician's opinion, the ALJ evaluates the opinion under the same regulatory factors that apply to all medical opinions. *See Halloran v. Barnhart*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c). The fact that the ALJ did not mention every factor is not fatal where – as here – the ALJ demonstrated a "searching review of the record," assuring the Court "that the substance of the treating physician rule was not traversed." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (per curiam) (citing *Halloran*, 362 F.3d at 32) (noting that the Court will affirm the Commissioner's decision if a "searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed.").

The ALJ properly found Dr. Kim's opinion was not only inconsistent with treatment records but also with plaintiff's activities and testing from other medical sources. (Tr. 22-23). ALJ Seeley considered the only mental status examination in the treatment notes, which was conducted by Dr. Kim when Plaintiff started treatment in April 2014 (Tr. 21, 602-03). Dr. Kim noted that Plaintiff was "tense and anxious," but his other findings were benign. (Tr. 602-03). Plaintiff's memory was "acceptable," her concentration was "good," and her insight and judgment were "fair." (Tr. 603). The treatment notes continually show "[n]o significant changes" to Plaintiff's mental status, so the April 2014 results are a fair assessment of plaintiff's functioning throughout the relevant period. (Tr. 926, 929, 932, 975, 979, 983, 986, 989, 992, 1000, 1003, 1011, 1013,

1016, 1018, 1024, 1025-26, 1029-32, 1035-36). Plaintiff's anxiety and depression were primarily related to situational stressors such as financial, health, and family problems with which plaintiff had trouble dealing. (Tr. 21, 775-91, 880-89, 919-47, 967-76). Treatment records state plaintiff "did well opening up," interacting, and engaging during treatment. (Tr. 926, 932, 975, 979, 983, 992, 1000, 1003, 1011, 1013, 1016, 1018, 1024, 1028). Plaintiff even said that her counseling and medication were "helpful" in managing her symptoms. (Tr. 648). Treating neurologist Dr. Kinkel said that plaintiff's depression and anxiety "appear to be getting under better control." (Tr. 811).

Dr. Kim's opinion was also inconsistent with the consultative examination and extensive neuropsychological testing. Consultative examiner Dr. Ippolito observed that plaintiff's attention, memory, and concentration were impaired due to "some distractibility," but her other findings were unremarkable. (Tr. 650-51). Likewise, specialist Dr. Santa Maria's neuropsychological testing showed "scattered weaknesses" on quantitative cognitive assessments, but plaintiff performed normally on many standard memory tests. (Tr. (Tr. 809, 811, 821). She also performed poorly on several cognitive effort tests, which suggested that her "true" abilities were higher than the testing indicated. (Tr. 821).

Similar to the physical RFC, the ALJ properly considered plaintiff's extensive activities, which were inconsistent with the extreme limitations opined by Dr. Kim. Regarding plaintiff's social functioning, the ALJ noted that she went out for meals with a friend and enjoyed going to concerts. (Tr. 22, 58, 793, 816). She kept in touch with her mother and sister and talked to her friend occasionally. (Tr. 18, 58, 651). She was able to interact with strangers in a grocery store or a doctor's office. (Tr. 18, 58-59, 651, 816). Although plaintiff's daily activities do not by themselves disprove her disability, they suggest that she had many of the mental abilities required to perform the unskilled work to which the ALJ limited her. (Tr. 19, 24). *Cf. Roma v. Astrue,* 468

Fed.App'x 16, 19 (2d Cir. Jan. 19, 2012) (holding that ALJ properly declined to give controlling weight to doctor's opinion in part because the opinion conflicted with the claimant's own testimony that he could perform a reasonably broad range of light, non-stressful activities, including driving, reading, sending e-mail and independently performing activities of daily living). Also, the fact that the ALJ did list inconsistent activities, when giving little weight for that reason is unsuccessful. (Dkt. No. 10 at 23). The ALJ had already discussed plaintiff's activities earlier in the decision. (Tr. 18).

The ALJ also properly considered that plaintiff quit her longtime job because of a difficult boss and not mental or physical impairments. (Tr. 648, 816, 921, 1002-03). As the ALJ noted, plaintiff had a problem with "a particular" individual, not full-time work in general. (Tr. 22). In addition, plaintiff was able to continue working in this environment until her New York state retirement was approved. (Tr. 22, 42, 45). The ALJ was entitled to consider that plaintiff stopped working for reasons other than her allegedly disabling impairments. *See Karlsson-Hammitt v. Colvin*, No. 13-CV-916S, 2014 WL 5500663, at *7 (W.D.N.Y. Oct. 30, 2014) (citing *Schaal v. Apfel*, 34 F.3d 496, 502 (2d Cir. 1998) and 20 C.F.R. § 416.929(c)(3)).

It is the ALJ's role to resolve conflicts between medical opinions. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (noting that it is within the ALJ's discretion to sort through and resolve conflicts in the evidence). The ALJ was entitled to rely on the opinions of the consultative examiners because they were more consistent with the evidence as whole. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (holding that an ALJ is not required to accept the opinion of a treating physician over other contrary opinions if the latter are more consistent with the weight of the evidence).

ACCORDINGLY, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is

**DENIED;** and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

**GRANTED.**

Dated: March 26, 2020  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge